Edwin M. Larkin
Zachary W. Silverman
EDWARDS WILDMAN PALMER LLP
750 Lexington Avenue
New York, NY 10022
(212) 308-4411
Attorneys for Plaintiff

**13 CIV 6415**

RECEIVED
SEP 12 2013
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

\- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

EXCEL TECHNOLOGY, INC.,

                Plaintiff,

      -against-

EXCEL LASER TECHNOLOGY PRIVATE
LIMITED,

                Defendant.

\- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No. 13-cv-_____

**COMPLAINT**

**Plaintiff Demands Trial By Jury**

Plaintiff Excel Technology, Inc., through its undersigned counsel, hereby alleges as

follows, on personal knowledge as to its own acts and otherwise on information and belief:

## PARTIES

1.     Plaintiff Excel Technology, Inc. is a Delaware corporation with a principal office

in East Setauket, New York.  It is registered to do business in the State of New York.

2.     Defendant Excel Laser Technology Private Limited ("ELT") is an Indian

corporation with a principal office in Mumbai, India.  For the purposes of this action, ELT has

consented to the jurisdiction of this Court.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction under 28 U.S.C. § 1332 because this lawsuit is

between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of

interest and costs.

4.      Venue is proper under 28 U.S.C. § 1391(b) and because, for the purposes of this action, the parties agreed to a forum selection clause designating the Southern District of New York as the only proper federal venue.

**FACTS**

5.      On or about November 21, 2005, Excel and ELT entered into a Loan and Security Agreement ("Agreement"), a true and correct copy of which is annexed hereto as **Exhibit A**.

6.      Pursuant to the Agreement, Excel agreed to "provide [ELT] with a Loan in the amount of $1,500,000," which loan was to be "evidenced by [ELT's] promissory note . . . ."

7.      Concurrently with its execution of the Agreement, ELT executed a Promissory Note ("Note") (annexed as "Exhibit A" to the Agreement), pursuant to which it agreed to pay the principal amount – $1,500,000 – in accordance with the schedule annexed as "Exhibit B" to the Agreement.

8.      Essentially, the Note's schedule required ELT to make quarterly payments to Excel between July 1, 2008 and March 31, 2014, until the principal was fully paid.

9.      The Note described several "Events of Default."  Among these were (1) "[ELT's] failure to observe or perform any covenant or condition of this Note . . . (including payment obligations), and such default continues for a period of five days after notice in writing has been given . . . specifying such default and requiring [ELT] to rectify same," and (2) "[ELT's] insolvency (however evidenced), the commission by [ELT] of any act of insolvency, or [ELT's] admission in writing its [sic] inability to pay its debts as they become due."

10.      As to (1), notice was to be made either by "major overnight courier," or via "registered air mail."  If made by major overnight courier, it would be deemed given two days later, and if made via registered mail, it would be deemed given five days later.

11.     Upon an occurrence of an Event of Default, the Note was to "bear interest at the lesser of 10% or the maximum rate permitted by the foreign exchange law in India," and "the Principal and any Default Interest shall, at the option of [Excel], become due and payable without notice or demand."

12.     Pursuant to the Note, ELT's "obligation to pay Principal and Default Interest, if any, shall be absolute and unconditional and without regard to any defense, offset, or counterclaim which may at any time be available to" ELT.

13.     Furthermore, "[n]o delay or omission in the exercise or enforcement by [Excel] of any rights or remedies [provided in the Note] shall be construed as a waiver of any right or remedy of" Excel.

14.     Both the Agreement and the Note have identical provisions regarding applicable law, jurisdiction, and venue. Specifically:

> This Agreement shall be governed by and construed in accordance
> with the laws of the State of New York, without giving any effect
> to any doctrine pertaining to the conflict of laws. The parties
> hereto irrevocably (a) submit to the jurisdiction of any court of
> competent sitting [sic] in . . . . the United States District Court for
> the Southern District of New York [sic] in any action or
> proceeding arising out of or relating to this Agreement, (b) agree
> that all claims with respect to such action or proceeding shall be
> heard and determined in such a New York . . . federal court . . . .

15.     Pursuant to the Agreement and Note, as part of its quarterly payment obligation, ELT was to remit $56,250 to Excel on January 1, 2010. However, it failed to do so.

16.     After missing the January, 2010 payment, ELT made timely quarterly payments of $56,250 in April, July, and October, 2010.

17.     Pursuant to the Agreement and Note, the next quarterly payment was due on January 1, 2011. However, ELT failed to remit to Excel any of the $56,250 due.

18.     Shortly thereafter, on or about January 7, 2011 Janine Mehlinger of Excel emailed Avinash Desai of ELT to inquire as to when Excel could "expect receipt" of the "loan payment."

19.     On or about January 8, 2011, Mr. Desai responded that ELT was awaiting payment of a commission from a third party, after which it would be able to pay the January, 2011 installment in full.

20.     Mr. Desai's email indicates that, as of January 8, 2011, ELT was insolvent in that it could not pay its debts when due. This constituted an Event of Default under the Note.

21.     On or about March 14, 2011, Ms. Mehlinger emailed Mr. Desai again, advising that the "1/1/11 payment still has not been received by Excel," despite ELT's having received the commission from the third party. Ms. Mehlinger also noted that the "4/1/11 payment is quickly approaching," meaning the $56,250 due to Excel on April 1, 2011, pursuant to the Note.

22.     Mr. Desai responded on or about March 15, 2011, acknowledging that "[w]e do agree that we had committed to do the payment but we were in need of funds for doing Income tax and vendor's payment. Therefore we were unable to pay the same."

23.     Mr. Desai's March 15, 2011 email constituted a separate Event of Default under the Note, as he admitted that ELT could not pay its debts as they became due.

24.     Since October 1, 2010, ELT has not made a single payment on the Note, even though, according to same, it was required to make quarterly payments to Excel until March, 2014.

25.     On or about July 8, 2013, Excel sent a letter to ELT, via registered air mail]stating that, to date, ELT had failed to make quarterly payments pursuant to the Note in the total amount of $675,000, plus interest.

26.     When ELT failed to rectify its non-payment by July 18, 2013, this constituted yet another Event of Default under the Note.

27.     On or about July 30, 2013, Excel's Indian counsel, Amarchand Mangaldas, sent another letter to ELT, wherein it stated that ELT's failure to cure within five days of receipt of the July 8, 2013 letter constituted an Event of Default.  It also stated that the entire principal due was $831,250, on which ELT also owed interest of $257,707.51 pursuant to the Note.

28.     ELT did not respond to the July 30, 2013 letter and has not made any subsequent payments to Excel pursuant to the Note.

## COUNT I
### (Breach of Contract)

29.     Excel realleges each of the foregoing paragraphs of the complaint as though fully set forth herein.

30.     The Agreement and Note constitute a valid contract between Excel and ELT.

31.     Excel performed under the Agreement and Note by loaning ELT $1,500,000.

32.     ELT breached the Agreement and Note by failing to pay back the $1,500,000 as described in those documents.

33.     Excel has been damaged by ELT's breach in the amount of the remaining principal on the Note, plus the interest provided for therein, and in any event, no less than $1,088,957.51, plus interest thereon.

## COUNT II
### (Unjust Enrichment)

34.    Excel realleges each of the foregoing paragraphs of the complaint as though fully set forth herein.

35.    ELT unjustly benefitted from the loan made by Excel pursuant to the Agreement and Note in that it did not pay back the vast majority of that loan as required by the Agreement and Note.

36.    Equity and good conscious require that Excel receive restitution from ELT for the latter's failure to pay back the loan pursuant to the Agreement and Note.

37.    Excel has suffered damages in the amount of at least $1,088,957.51, plus interest thereon.

## COUNT III
### (Account Stated)

38.    Excel realleges each of the foregoing paragraphs of the complaint as though fully set forth herein.

39.    Excel sent ELT a statement indicating a total balance of $1,088,957.51 due Excel under the Agreement and Note.

40.    ELT received and retained that statement.

41.    ELT kept the statement, without objection, for a reasonable time.

42.    Since receiving the statement of account reflecting a total balance due Excel of $1,088,957.51 and retaining it for a reasonable amount of time without objection, ELT has paid nothing on that statement of account.

43.    Accordingly, Excel has stated an account against ELT and has suffered damages in connection therewith in an amount of at least $1,088,957.51, plus interest thereon.

WHEREFORE, plaintiff Excel Technology, Inc. demands judgment of defendant Excel Laser Technology Private Limited in the manner described above, together with interest and the costs and disbursements of this action, including attorneys' fees, and for such other and further relief in favor of Excel and against ELT and the Trust as this Court deems just and proper.

Dated: New York, NY
September 12, 2013

Edwin M. Larkin
Zachary W. Silverman
EDWARDS WILDMAN PALMER LLP
750 Lexington Avenue
New York, NY 10022
(212) 308-4411
Attorneys for Plaintiff

AM 23851384.1

# EXHIBIT A

## LOAN AND SECURITY AGREEMENT

THIS LOAN AGREEMENT (this "Agreement") is dated as of November 21, 2005, by and between Excel Technology, Inc., a Delaware corporation with an address at 41 Research Way, East Setauket, NY 11733 ("Lender"), and Excel Laser Technology Private Limited, a corporation organized under the laws of India with an address at A1-424, Shah & Nahar Industrial Estate, Lower Parel, Dhanraj Mill Compound, Mumbai 400 013, India ("Borrower").

## RECITALS

WHEREAS, Borrower desires to borrow money from Lender, and Lender desires to loan money to Borrower, all in accordance with the terms of this Agreement.

NOW THEREFORE, in consideration of the premises and the mutual agreements, representations, warranties, conditions, and covenants contained herein, the parties hereto, intending to be legally bound, agree as follows:

1. Loan; Note. Concurrently with the execution and delivery of this Agreement, Lender will provide Borrower with a loan in the amount of $ 1,500,000 (the "Loan"). The Loan shall be evidenced by Borrower's promissory note in substantially the form attached hereto as Exhibit A (the "Note").

2. Utilization of Loan: The Borrower is to utilize the Loan for the purpose of acquisition and improvement of land and building described as leasehold plot of land bearing No. 06 and measuring 1,867 square meters, located in MIDC Industrial Area Road No 20, Marol Andheri (East) Bombay 40093, India (the "Property") as well as towards improvement and acquisition of capital assets which is part of the ongoing expansion project of the Borrower.

3. Representations and Warranties of Borrower.
    3.1   Authorization. This Agreement and the Note constitute the valid and binding obligations of Borrower, enforceable against Borrower in accordance with their terms.

    3.2   No Conflicts. The execution, delivery, and performance of this Agreement and the Note by Borrower will not (a) conflict with, or result in the breach or termination of, or constitute a default (or an event which, with notice or lapse of time or both, would become a default) under, any material lease, agreement, commitment, or other instrument, or any order, judgment, or decree to which Borrower is a party or by which Borrower is bound; or (b) constitute or result in a violation by Borrower of any law, regulation, order, writ, judgment, injunction, or decree applicable to Borrower.

4. Security of Loan: Upon acquisition of the Property, the Borrower shall and does hereby grant to Lender a first lien security interest in and to the Property. Borrower shall deliver such further documents, including a mortgage, required under the laws of India, to effectively transfer to Lender a first security lien on the Property, and make such filings thereof as required under the laws of India.

5. Miscellaneous.

5.1   Entire Agreement.  This Agreement, together with the Note, contain the complete, final, and exclusive agreement of the parties with respect to the subject matter contained herein and therein, and supersede, terminate, and cancel all prior agreements, negotiations, correspondence, undertakings and communications of the parties, oral or written, respecting such subject matter.

5.2   Severability.  In the event any provision (or any part of any provision) contained in this Agreement shall for any reason be finally held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Agreement; but this Agreement shall be construed as if such invalid, illegal or unenforceable provision (or part thereof) had never been contained herein, but only to the extent it is invalid, illegal or unenforceable.

5.3   Captions and Section Headings.  Captions and section headings used herein are for convenience only and are not a part of this Agreement and will not be used in construing it.

5.4   Fax Execution.  This Agreement may be executed by delivery of executed signature pages by fax, and such fax execution will be effective for all purposes.

5.5   Notice.  Any notice or other communication under this Agreement shall be in writing and shall be considered given when delivered personally, two days after being sent by a major overnight courier, or five days after being mailed by registered air mail, to the parties at their respective addresses first set forth above (or at such other address as a party may specify by notice to the other).

5.6   Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving any effect to any doctrine pertaining to the conflict of laws.  The parties hereto irrevocably (a) submit to the jurisdiction of any court of competent sitting in the State of New York, County of Suffolk or the United States District Court for the Southern District of New York in any action or proceeding arising out of or relating to this Agreement, (b) agree that all claims with respect to such action or proceeding shall be heard and determined in such a New York state or federal court, and (c) waive, to the fullest extent possible, the defense of an inconvenient forum.  The parties hereby consent to and grant any such court jurisdiction over the persons of such parties and over the subject matter of any such dispute and agree that delivery or mailing of process or other papers in connection with any such action or proceeding in the manner provided in Section 3.5 hereof or in such other manner as may be permitted by law shall be valid and sufficient service thereof.

5.7   Although the Governing Law of this agreement is the state of New York, it is understood by and between the parties that the aforesaid loan transaction as well as default interest as mentioned in the Exhibit A i.e The Promissory Note will be subject to the provisions of the Foreign Exchange Management Act, 1999 and/or ECB guidelines issued by the Government of India or Reserve Bank of India from time to time in this behalf.

5.8   Amendment; Waiver.  This Agreement cannot be altered, amended, changed, waived, terminated, or modified in any respect unless the same shall be in writing and signed by the parties hereto.  No waiver of any provision shall be construed as a waiver of any other provision.

5.9     Successors and Assigns.   This Agreement shall be binding upon and inure to the benefit of each party's successors and permitted assigns.   Borrower may not assign its rights and obligations under this Agreement (or the Note) without the express prior written consent of Lender; Lender may assign its rights and obligations under this Agreement (and the Note) without the prior consent of Borrower.

5.10    Counterparts.   This Agreement may be executed in counterparts, which together shall constitute the same instrument.

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date first set forth above.

Excel Technology, Inc.

By: _____
Name: Alice Varisano
Title:  Chief Financial Officer

Excel Laser Technology Private Limited

By: _____
Name: _____
Title: Director

3

EXHIBIT A

## PROMISSORY NOTE

$1,500,000                                                    November, 21 2005

     FOR VALUE RECEIVED, the undersigned, Excel Laser Technology Private Limited ("Borrower"), having an address at A1-424, Shah & Nahar Industrial Estate, Lower Parel, Dhanraj Mill Compound, Mumbai 400 013, India, promises to pay to the order of Excel Technology, Inc. ("Lender") at 41 Research Way, East Setauket, N.Y. 11733 (or at such other place as may be designated by Lender), the principal sum of ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000) (the "Principal"), without interest except as provided below. This Note is being issued pursuant to that certain loan agreement, of even date herewith, by and between Borrower and Lender.

     1.    Payment of Principal. Subject to acceleration as provided herein, the Principal shall be paid in accordance with Exhibit B, beginning July 1, 2007 and ending on March 31, 2014. Except as otherwise provided herein, each payment of Principal shall be accompanied by the payment of any accrued but unpaid Default Interest (as defined below).

     2.    Default Interest. Upon the occurrence of an Event of Default (as defined below), and during the continuance thereof, this Note shall bear interest at the lesser of 10% or the maximum rate permitted by the foreign exchange law in India (the "Default Interest").

     3.    Events of Default. The Principal and any Default Interest shall, at the option of Lender, become due and payable without notice or demand, upon the happening of any one of the following specified events (each, an "Event of Default"):

     (a)    Borrower's failure to observe or perform any covenant or condition of this Note on its part to be observed or performed (including payment obligations), and such default continues for a period of five days after notice in writing has been given to Lender by the holder specifying such default and requiring Borrower to rectify the same;

     (b)    Borrower's insolvency (however evidenced), the commission by Borrower of any act of insolvency, or Borrower's admission in writing its inability to pay its debts as they become due;

     (c)    Borrower's making of a general assignment for the benefit of creditors; or

(d)    the filing of any petition or the commencement of any proceeding by Borrower for any relief under any bankruptcy or insolvency laws, or any laws relating to the relief of debtors, readjustment of indebtedness, reorganizations, compositions, or extensions.

5.    Prepayment.  The privilege is reserved to Borrower to prepay the indebtedness evidenced hereby, in whole or in part, at any time or from time to time, without prepayment premium or penalty.

6.    Waivers.  Borrower hereby waives presentment, protest and demand, notice of protest and notice of dishonor of this Note.

7.    Notices.  Any notice or other communication under this Note shall be in writing and shall be considered given when delivered personally, two days after being sent by a major overnight courier, or five days after being mailed by registered air mail, to the parties at their respective addresses first set forth above (or at such other address as a party may specify by notice to the other).

8.    Severability.  In the event any provision (or any part of any provision) contained in this Note shall for any reason be finally held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be construed as if such invalid, illegal or unenforceable provision (or part thereof) had never been contained herein, but only to the extent it is invalid, illegal or unenforceable.

9.    Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving any effect to any doctrine pertaining to the conflict of laws.  The parties hereto irrevocably (a) submit to the jurisdiction of any court of competent sitting in the State of New York, County of Suffolk or the United States District Court for the Southern District of New York in any action or proceeding arising out of or relating to this Agreement, (b) agree that all claims with respect to such action or proceeding shall be heard and determined in such a New York state or federal court, and (c) waive, to the fullest extent possible, the defense of an inconvenient forum.  The parties hereby consent to and grant any such court jurisdiction over the persons of such parties and over the subject matter of any such dispute and agree that delivery or mailing of process or other papers in connection with any such action or proceeding in the manner provided in Section 6 hereof or in such other manner as may be permitted by law shall be valid and sufficient service thereof.

10.    Miscellaneous.

(a)    Payment of Principal and any Default Interest due hereunder shall be made in immediately available funds in lawful money of the United States of America.

(b)    Borrower and every endorser of this Note, and every other person at any time liable for the payment of the debt evidenced by this Note, shall be obligated, to the extent permitted by the laws of the State of New York, to pay to Lender all expenses of every

2

kind and nature whatsoever incurred in the enforcement of this Note or any rights hereunder, including, but not limited to, reasonable attorneys' fees, and hereby agrees to pay to Lender on demand the amount of any and all such expenses.

(c)     The failure of Lender to exercise any right or remedy granted to it hereunder on any one or more instances shall not constitute a waiver of any default by Lender, and all such rights and remedies shall remain continuously in force.  No delay or omission in the exercise or enforcement by Lender of any rights or remedies shall be construed as a waiver of any right or remedy of Lender, and no exercise or enforcement of any such right or remedy shall be held to exhaust any other right or remedy of Lender.

(d)     Borrower's obligation to pay Principal and Default Interest, if any, shall be absolute and unconditional and without regard to any defense, offset, or counterclaim which may at any time be available to Borrower which constitutes, or might be construed to constitute, an equitable or legal discharge of Borrower or but for this provision might otherwise give rise to a right of offset; provided that nothing contained in this Note shall be construed to prevent or restrict Borrower from asserting any rights which Borrower may have against Lender under this Note or under any provision of law, by a separate action or proceeding but not by abatement, attachment, recoupment, counterclaim, offset or defense against the payments to be made by Borrower under this Note.


IN WITNESS WHEREOF, Borrower has caused this Note to be executed and delivered as of the date first written above.


Excel Laser Technology Private Limited


By:_____

Name:_____

Title:_____   JOZZ   CARDOSO


3

Exhibit B
Repayment Schedule*

| | |
|---|---|
| July 1, 2007 | $62,500 |
| October 1, 2007 | 62,500 |
| January 1, 2008 | 37,500 |
| April 1, 2008 | 37,500 |
| July 1, 2008 | 37,500 |
| October 1, 2008 | 37,500 |
| January 1, 2009 | 56,250 |
| April 1, 2009 | 56,250 |
| July 1, 2009 | 56,250 |
| October 1, 2009 | 56,250 |
| January 1, 2010 | 56,250 |
| April 1, 2010 | 56,250 |
| July 1, 2010 | 56,250 |
| October 1, 2010 | 56,250 |
| January 1, 2011 | 56,250 |
| April 1, 2011 | 56,250 |
| July 1, 2011 | 56,250 |
| October 1, 2011 | 56,250 |
| January 1, 2012 | 56,250 |
| April 1, 2012 | 56,250 |
| July 1, 2012 | 56,250 |
| October 1, 2012 | 56,250 |
| January 1, 2012 | 56,250 |
| April 1, 2013 | 56,250 |
| July 1, 2013 | 56,250 |
| October 1, 2013 | 56,250 |
| March 31, 2014 | 100,000 |

| | |
|---|---|
| Total | $1,500,000 |

* Except as otherwise provided within the Promissory Note, each payment of Principal shall be accompanied by the payment of any accrued but unpaid Default Interest.